UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN WHITE, as Personal Representative
of the Estate of KAYLA WHITE, deceased,
and CODY CAMPBELL, as Personal Representative
of the Estate of BRAEDIN CAMPBELL,          Case Number 17-12320
deceased,                                    Honorable David M. Lawson

            Plaintiffs,

v.

FCA US, LLC and CLARENCE HEATH,

            Defendants.
_____/

## OPINION AND ORDER DENYING MOTION
## TO REMAND AND MOTION TO DISMISS

The genesis of this case is a tragic automobile accident. Decedent Kayla White was immolated when the 2003 Jeep Liberty she was driving burst into flames after it was struck from the rear by another car. White was five months pregnant at the time. Her estate and the estate of her unborn fetus brought a product liability action in state court against the driver of the other vehicle and defendant FCA US, LLC, also known as Fiat Chrysler, US, LLC. The 2003 Jeep, however, was manufactured by Chrysler LLC, a company that ceased operating in 2009 after filing for bankruptcy. The plaintiffs allege that the present defendant, FCA US, LLC, purchased the assets from the "Old Chrysler" under a Master Transaction Agreement (MTA) that was approved by the bankruptcy court, in which FCA agreed to assume responsibility for product liability claims arising from a certain class of vehicles, which included the Jeep Kayla White was driving.

FCA removed the action to this Court under 28 U.S.C. § 1334(b), contending that the plaintiffs' product liability claim the "arises in" the Old Chrysler bankruptcy proceeding, because the Court will be required to interpret the MTA, especially the liability-transfer provision. FCA

points to language in that provision that excludes "any claim for exemplary or punitive damages," and it argues that the plaintiffs are seeking that category of damages when they contend that the defendant had actual knowledge of the product defect when it sold the vehicle, which it willfully disregarded. The plaintiffs made those allegations on the way to their argument that they should not be restricted by the cap on damages under Michigan product liability law.

The plaintiffs insist that nowhere in their amended complaint have they sought exemplary or punitive damages, and they have filed a motion to remand the case to state court. They argue that Old Chrysler's bankruptcy case is not implicated because this Court need not be concerned with the exemplary and punitive damages restriction. Defendant FCA opposes the remand motion, and it has filed a motion of its own to dismiss the complaint on three grounds, one of which is that the plaintiffs are seeking damages from them which they did not assume any obligation to pay under the MTA.

In order to determine whether defendant FCA is liable for damages caused by a vehicle it did not manufacture, the Court inevitably must examine and interpret the MTA. Consequently, the case "arises in" the bankruptcy proceeding, and in fact is a core proceeding. Therefore, the Court has subject matter jurisdiction under 28 U.S.C. § 1334(b), and the motion to remand will be denied. Although the plaintiffs allege in the amended complaint that the defendant possessed scienter that may be consistent with a claim for punitive or exemplary damages, a plain reading of that pleading does not suggest those categories of damages are being sought. The amended complaint otherwise states valid claims. The motion to dismiss, therefore, likewise will be denied.

In early 2009, the "Old Chrysler" auto company entered into a highly publicized bankruptcy proceeding, which eventually involved a partial takeover of the company by the United States government and a transition sale of most of Chrysler's assets and operations to Fiat, SpA (the Italian car maker), via the formation of a new entity that became Fiat Chrysler, US, LLC (a/k/a FCA US, LLC). As part of the bankruptcy proceedings, Old Chrysler entered into an agreement to sell substantially all of its assets to the successor entity through a Master Transaction Agreement (MTA). The MTA executed between the parties to the bankruptcy sale on May 19, 2009 stated that FCA would assume certain liabilities for tort claims relating to vehicles made by Old Chrysler before the sale. On October 29, 2009, the parties to the sale executed an amendment which, among other things, altered section 2.08(h) of the Agreement to expand the scope of the assumed liabilities to include

> all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicles or MOPAR branded parts, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

Notice of Removal, Ex. 3, Am. No. 4 to Master Trans. Agrmt. dated Oct. 29, 2009 (Pg ID 188). The amendment to the sale agreement was approved by an order of the bankruptcy court on November 19, 2009.

On June 13, 2017, plaintiffs Susan White and Cody Campbell, as personal representatives for the estates of their respective decedents Kayla White and Braedin Campbell, filed a lawsuit against defendants FCA and Clarence Heath in the Oakland County, Michigan circuit court. Susan

White is the mother of the deceased Kayla White, and Cody Campbell was the fiancé of Kayla White and father of their unborn fetus Braedin Campbell. After the case was removed to this Court by the defendant, White filed an amended complaint. The facts that follow are stated as alleged in that amended complaint.

In 2006 Kayla White's father Rusty White bought a 2003 model year Jeep Liberty (KJ), which as part of its design had a fuel tank located behind the rear axle, close to and hanging slightly below the rear bumper. Some time in 2013, Kayla White's parents gave the 2003 Jeep Liberty to her. In June 2014 Kayla White became pregnant. In August 2014, in response to a number of rear-end collisions that resulted in fires as a result of spilled fuel from the rear-mounted tanks igniting, FCA issued a recall notice for model year 2002 through 2007 Jeep Liberty (KJ) vehicles with rear-mounted fuel tanks. FCA advised affected owners that the rear-mounted tanks would be replaced at FCA's expense, but that owners should await a further notice from the company about when to bring their vehicles in for a recall repair.

On November 11, 2014, at around 4:30 p.m., Kayla was driving to work in the Jeep through the City of Southfield, Michigan, when she was forced to slow down due to heavy traffic. Her car was struck from behind by a car driven by Clarence Heath. Heath failed to brake in time to avoid the slowing cars in front of him. White's Jeep was pushed into the car in front of her, which in turn was pushed into another vehicle. The front bumper of Heath's car entered a "nosedive" due to Heath's heavy braking effort just before impact, which caused the front of the car to go under the Jeep's rear bumper, striking the fuel tank, and also flipping the Jeep over to rest on the driver side, pinning the driver side door shut. The rear hatch of the Jeep also popped open from the impact. However, White and her unborn fetus were not seriously injured by the initial collision. The fuel

tank of the Jeep was broken open by the impact, and spilled gasoline from the tank quickly ignited. White was unable to escape the Jeep due to the rollover pinning the driver side door shut and the spread of flames into the vehicle through the open rear hatch, although she tried for several minutes to open the exposed passenger door without success. It was determined that White died from burns and smoke inhalation while still trapped inside the Jeep.

The complaint pleads claims against defendant Heath for negligence (Count VII), and against defendant FCA for (1) product liability under Michigan Compiled Laws § 600.2947(3) (Count I); (2) defective design under Mich. Comp. Laws §§ 600.2946(2), 2946a(3), 2949a (Count II); (3) failure to warn under Mich. Comp. Laws § 600.2946(2) (Count III); (4) breach of the implied warranty of fitness for use (Count V), and (5) "negligent recall" (Count VI).

In each of the substantive counts of the complaint against defendant FCA, the plaintiffs alleged that the defendant's gross negligence in designing and subsequently failing to repair the Jeep Liberty or adequately warn about its defects, and its willful disregard of the hazards of the Jeep's design, caused the wrongful deaths of their decedents, for which the plaintiffs assert that they are entitled to recover damages under the Michigan Wrongful Death Statute including for:

    a. The deaths of Kayla White and Braedin Campbell;
    b. Conscious pain and suffering;
    c. Loss of society and companionship;
    d. Pain, suffering[,] and emotional distress, past, present and future;
    e. Humiliation, mortification, [and] fright, past, present and future;
    f. Medical expenses;
    g. Lost wages, compensation, and earning capacity, past, present and future;
    h. Emotional and mental suffering, past, present and future;
    i. Loss of enjoyment of life, past, present and future;
    j. Attorney fees and legal costs;
    k. Any and all other injuries and damages found to be appropriate by the trier of fact.

Am. Compl. ¶¶ 104, 112, 117, 122. The plaintiffs also alleged in Count IV of their amended complaint that, because the defendant had actual knowledge of the Jeep's fuel tank design defect and willfully disregarded the risk that the design would cause the deaths of Kayla White and her unborn fetus, and because an alternative design that would have prevented their deaths was economically and technically feasible, "pursuant to M.C.L. 600.2949a, the cap on non-economic damages is inapplicable to this litigation." *Id.* ¶¶ 118-121.

The plaintiffs filed their complaint in the Oakland County, Michigan circuit court on June 13, 2017. The defendant removed the case to this Court on July 17, 2017. The defendant then filed a motion to dismiss, and the plaintiffs filed a motion to remand. The plaintiffs later filed an amended complaint, but the parties stipulated (and the Court has ordered) that the motion to dismiss is deemed to apply to the amended pleading. The Court heard oral argument on both motions on November 9, 2017.

## II.

The plaintiffs challenge this Court's subject matter jurisdiction and have moved to remand the case to state court. Defendant FCA contends that this Court has jurisdiction under 28 U.S.C. § 1334(b), which states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Although FCA spills much ink in its removal notice discussing the need to interpret the MTA's language excluding "claim[s] for exemplary or punitive damages," it summarized its basic rationale for the idea that this case "aris[es] in" the Old Chrysler bankruptcy as follows:

> The State Action "arises in" the Bankruptcy Code because FCA US's liability in this case necessarily derives from the Sale Order. FCA US, of course, did not exist at the time that the vehicle here was designed, manufactured, and sold. Liabilities that it assumed from the real manufacturer must be identified in the MTA, and determining

whether FCA US will be liable in this particular case will require a court to interpret and enforce the Sale Order.

Removal Notice ¶ 24

The plaintiffs insist, however, that (1) the claims in this case do not "arise under" the Bankruptcy Code or "arise in" a bankruptcy proceeding, because they all are state-law tort claims and the plaintiffs' right to recovery of damages would be exclusively against FCA, not Old Chrysler or the bankruptcy estate; and (2) the case is not "related to" the bankruptcy because the plaintiffs do not seek exemplary damages, and their claims thus do not implicate the bankruptcy order of sale that limits FCA's liability against such claims.

A defendant may remove a case from state court to federal court if "the district courts of the United States [would] have [had] original jurisdiction" over the case. 28 U.S.C. § 1441(a). Defendant FCA here carries the burden of establishing subject matter jurisdiction. *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) ("As the party seeking removal, the [defendant bears] the burden of establishing federal court jurisdiction.") (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)). And, as noted above, it predicates its claim of federal jurisdiction on the idea that the Court must interpret the MTA and the bankruptcy order of sale to determine if White's Jeep is one of the vehicles for which it assumed responsibility for product liability claims. It believes, therefore, that this state law case relates to the bankruptcy.

"The grant of jurisdiction over proceedings 'related to' the bankruptcy case is quite broad." *In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995)). "The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Ibid.* (citing *Lindsey v. O'Brien, Tanski, Tanzer*

*and Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996)) (quotation marks and alterations omitted). "'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Ibid.* (quoting *Lindsey*, 86 F.3d at 489). "The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b)." *Ibid.* (quotations and alterations omitted). "Instead, there must be some nexus between the 'related' civil proceeding and the title 11 case." *Ibid.*

"For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between . . . proceedings 'arising under,' 'arising in,' and 'related to' a case under title 11 . . . . [I]t is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1142 (6th Cir. 1991). The "'related to' inquiry asks . . . whether the *outcome* of the claims would affect the estate," and, accordingly, "whether there is a nexus between the other proceeding and the *bankruptcy case*." *Greektown*, 728 F.3d at 578 (citing *Lindsey*, 86 F.3d at 489) (emphasis in original).

The plaintiffs here seek to hold FCA accountable for defects in a vehicle that was manufactured by Old Chrysler. Were it not for the MTA, the plaintiffs would have to bring their claim as an adversary proceeding in Old Chrysler's bankruptcy case. A successful judgment likely would make the plaintiffs unsecured creditors of Old Chrysler, who would share with other such creditors in the estate's assets, if any. However, the MTA and order of sale would transfer that liability to FCA — if it actually applies to the vehicle described in the amended complaint. It is hard

to imagine how the Court could allocate that liability without construing the MTA; the consequence of that construction necessarily has an effect on Old Chrysler's bankruptcy estate.

The first premise of the plaintiff's right to pursue relief against FCA, therefore, is the fact that FCA expressly assumed all product liability claims related to a category of vehicles made by Old Chrysler. As the defendant correctly points out, the state case "arises in" and "relates to" the bankruptcy, because (1) FCA did not exist when the 2003 Jeep was made and was not the entity that designed or manufactured the Jeep; (2) FCA's liability for the claims pleaded in the complaint necessarily derives from the bankruptcy sale agreement and order confirming that sale that was entered in the bankruptcy case; and (3) in order for the case to proceed at all, the plaintiff must begin by showing that FCA assumed liability for the claims pleaded.

All of those issues exist in the case irrespective of whether the plaintiffs are attempting to recover punitive or exemplary damages. Absent that issue, of course, the interpretation of the MTA is a simple task. But interpretation is required nonetheless. That FCA raised the damages exclusion issue simply reinforces the point that the case relates to Old Chrysler's bankruptcy proceeding. Now, the plaintiffs also must demonstrate that those claims are not precluded by the express exceptions laid out in the bankruptcy sale order. Once again, that will require this Court in the first instance to interpret and apply the terms of the MTA.

The plaintiffs also contend that, even if the case does "arise in" or "relate to" a bankruptcy matter, the Court must decline to exercise its bankruptcy jurisdiction under the mandatory abstention provision of 28 U.S.C. § 1334(c)(2). That provision states that federal courts "shall abstain from hearing" cases "based upon a . . . State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not

have been commenced in a court of the United States absent jurisdiction under" section 1334(b). *See In re Timco, LLC*, 511 F. App'x 513, 515 (6th Cir. 2013) (quoting 28 U.S.C. § 1334(c)(2)) (explaining that where "'an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction,'" and "if the action is non-core and if no basis for jurisdiction other than § 1334(b) exists, the bankruptcy court 'shall abstain from hearing' it").

That exception does not apply to core proceedings. "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011). The Bankruptcy Code defines "core proceedings" to include, among other things, "'matters concerning the administration of the estate' [and] 'orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate.'" *Stern*, 564 U.S. at 475 n.3 (quoting 28 U.S.C. § 157(b)(2)). The adjudication of state-law claims "'may be considered [a] core [proceeding] if [those claims] are dependent upon the rights created in bankruptcy.'" *In Matter of Galaz*, 841 F.3d 316, 323 (5th Cir. 2016) (quoting *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 305 (5th Cir. 2013)).

Such is the case here. As one court explained:

> Before any court considers the merits of the case, it will first have to interpret the scope of the Sale Order as applied to the Plaintiff's claims. Therefore, the court finds that the case 'arises in' a bankruptcy case and that it is a core proceeding. There is proper jurisdiction under § 1334(b), removal was proper under § 1452, and mandatory abstention under § 1334(c)(2) is not applicable.

*Powell v. FCA US LLC*, No. 15-393, 2015 WL 5014097, at *4 (M.D. Ala. Aug. 21, 2015) (collecting cases). There is no basis for mandatory abstention under section 1334(c)(2), because the interpretation and enforcement of provisions of a bankruptcy order of sale is a "core proceeding" implicating the administration of the estate or enforcement of an order for sale of property. "In

-10-

*Cohens v. Virginia*, Chief Justice Marshall famously cautioned: 'It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Marshall v. Marshall*, 547 U.S. 293, 298-99 (2006) (quoting 6 Wheat. 264, 404 (1821)). Here, the Court is not free to abstain from the exercise of jurisdiction plainly granted by Congress. The case was properly removed, and it may not be remanded under any form of abstention.

### III.

Invoking Federal Rule of Civil Procedure 12(b)(6), FCA argues in its motion that the amended complaint should be dismissed because (1) the plaintiffs' claims for noneconomic damages beyond the $500,000 cap under the product liability statute are in essence "exemplary damages," and the sale order confirmed by the bankruptcy court expressly excluded claims for exemplary damages from the scope of liabilities assumed by FCA US, LLC; (2) the Court should dismiss Count VI alleging "negligent recall," because under Michigan law because there is no recognized duty for a manufacturer to perform a post-sale recall or repair of a defective product; and (3) the amended complaint fails to set forth any "short and plain statement" of the plaintiffs' claims. The plaintiffs dispute each of these arguments.

The standards under Rule 12(b)(6) are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiffs are entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are

accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

When deciding a motion under Rule 12(b)(6), the Court looks to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, and documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Solerne, N.A.*, 534 U.S. 596 (2002). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

## A.

Under Michigan law, when a plaintiff alleges that a product defect caused death, "the total amount of damages for noneconomic loss shall not exceed $500,000.00." Mich. Comp. Laws § 600.2946a(1). However, "if the court determines that at the time of manufacture or distribution the defendant had actual knowledge that the product was defective and that there was a substantial

likelihood that the defect would cause the injury that is the basis of the action, and the defendant willfully disregarded that knowledge in the manufacture or distribution of the product, then [the damage cap] do[es] not apply." Mich. Comp. Laws § 600.2949a. In an effort to plead around the damage cap, the plaintiffs alleged in their amended complaint that the defendant "was grossly negligent and acted with willful disregard for the safety of ultimate users" when it "design[ed], manufactur[ed], and market[ed] the 2003 Jeep Liberty." Am Comp. ¶ 110 (Page ID 1316). FCA contends that the allegation constitutes a forbidden request for exemplary damages, which FCA did not assume from the Old Chrysler, and therefore the amended complaint does not state a claim against it.

Under Michigan law, "[e]xemplary damages are awarded for injury to feelings and for the sense of indignity and humiliation suffered by a plaintiff because of injury maliciously and wantonly inflicted." *American Central Corp. v. Stevens Van Lines, Inc.*, 103 Mich. App. 507, 514-15, 303 N.W.2d 234, 237 (1981) (citations omitted). They are a species of compensatory damages, but they are "restricted to the party who has received the physical injury." *Ray v. City of Detroit*, 67 Mich. App. 702, 704, 242 N.W.2d 494, 495 (1976). Perhaps for that reason, "exemplary damages are not recoverable in a wrongful death action." *Fellows v. Superior Prod. Co.*, 201 Mich. App. 155, 157, 506 N.W.2d 534, 536 (1993); *see also In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. 793, 805 (E.D. Mich. 1989).

Nowhere in the amended complaint do the plaintiffs make any demand for any such damages. Contrary to FCA's reading of the pleadings and applicable law, they also do not anywhere allege facts that compel an inference that the damages sought are in substance essentially "exemplary" in nature, as that species of damages has been construed by Michigan courts. The

complaint alleges only that the defendant was "grossly negligent" and acted with "willful disregard" for the risks to the plaintiffs' decedents posed by its defective fuel tank design. Am. Compl. ¶¶ 110, 112, 117, 119, 127, 130. Nowhere do the plaintiffs allege, or plead facts to suggest, that their allegations about the defendant's prior knowledge is intended to sustain a claim for exemplary damages under Michigan law.

FCA argues that the plaintiffs allege scienter by the defendant that is consistent with a plea for exemplary damages. Perhaps, although it does appear that the allegations in the amended complaint stop short of accusing the defendant of the malicious, willful, and wanton conduct that is required to establish a right to recover exemplary damages. *See Midfield Concession Enterprises, Inc. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122, 1144 (E.D. Mich. 2015) (noting that under Michigan law, "[i]n order to successfully assert a claim for exemplary damages, the plaintiff must show that the injuries were maliciously, willfully, and wantonly inflicted") (citing *Unibar Maintenance Services, Inc. v. Saigh*, 283 Mich. App. 609, 630, 769 N.W.2d 911, 924 (2009)). "The theory of [the cases on point] is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings." *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 419, 295 N.W.2d 50, 55 (1980). Nonetheless, the fact that such a state of mind is a fundament of an exemplary damage claim does not mean that pleading that state of mind converts an ordinary damage complaint into a plea for exemplary damages, where no such damages actually are requested.

There is no question that the plaintiffs seek noneconomic damages. They list those as consisting of "[c]onscious pain and suffering," [l]oss of society and companionship, "emotional distress, past, present and future," [h]umiliation, mortification, [and] fright, past, present and future,"

"[e]motional and mental suffering, past, present and future," and "[l]oss of enjoyment of life, past, present and future." Those damages are allowed under Michigan's Wrongful Death Act. *See* Mich. Comp. Laws § 600.2922(6). The plaintiffs' allegations about the defendant's state of mind plainly are designed to avoid the cap on noneconomic damages. There is no suggestion in the amended complaint, however, that the plaintiffs intend to leverage those allegations into a plea for a different species of noneconomic damages. The defendant has offered no authority on point holding that compensatory hazard damages in excess of the statutory cap magically are transformed into "exemplary" damages merely based on the amount of the recovery.

There is nothing in the amended complaint that upsets FCA's assumption of liability as set out in the MTA and bankruptcy order of sale. The MTA is plain, and it states that FCA assumed "*all Product Liability Claims* arising from the sale on or prior to the Closing of motor vehicles . . . manufactured by [Old Chrysler] . . . sold as a . . . Jeep . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, . . . and (D) do not include any claim for exemplary or punitive damages." Notice of Removal, Ex. 3, Am. No. 4 to Master Trans. Agrmt. dated Oct. 29, 2009 (Pg ID 188) (emphasis added).

All claims means "all claims" — subject to the narrowly delineated exceptions stated in the MTA. None of those exceptions makes a reference to barring claims beyond any statutory cap on noneconomic damages, or claims for damages predicated on a particular *scienter* or severity of culpability of the defendant's alleged conduct. "There is no more comprehensive term than 'all.'" *Whaley v. Henry Ford Health Sys.*, 172 F. Supp. 3d 994, 1000-01 (E.D. Mich. 2016) (citing *Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 716 (8th Cir. 2003) (holding, in the context of

construing written instruments, that "[i]n short, 'all' means all"); *County of Oakland v. Federal Housing Finance Agency*, 716 F.3d 935, 940 (6th Cir.2013) (observing that "a straightforward reading of the statute leads to the unremarkable conclusion that when Congress said 'all taxation,' it meant all taxation")); *see also In re Hydro Action, Inc.*, 266 B.R. 638, 645 (Bankr. E.D. Tex. 2001) ("Notwithstanding the proclivities of a recent Chief Executive to the contrary, the meanings of these three comprehensive words are not subject to serious dispute. 'All' means all. 'Every' means every. 'Any' means any."). The amended complaint states a product liability claim against defendant FCA.

<div align="center">B.</div>

As noted above, FCA also argues that Count VI of the amended complaint (alleging "negligent recall") is defective because under Michigan law there is no recognized duty for a manufacturer to perform a post-sale recall or repair of a defective product. The Court disagrees.

The plaintiffs adequately have pleaded a claim that defendant FCA (itself, not its predecessor) acted unreasonably in carrying out the voluntary recall of the 2003 Jeep Liberty (KJ) in August 2014 when it (1) failed or refused promptly to issue a notice after instructed by the federal government to do so; (2) failed adequately to warn drivers of the severity of the risk of fuel fires that could result from a ruptured gas tank in a rear-end collision; and (3) failed to direct drivers of the Jeep models affected to park their cars and not drive them until repairs could be performed. Those acts go well beyond the defendant's construction of the claim as merely alleging a failure to perform a post-sale repair or recall of a defective vehicle. And it is well established under Michigan law that a "party may be under a legal duty when it voluntarily assumes a function that it is not legally required to perform." *Zychowski v. A.J. Marshall Co.*, 233 Mich. App. 229, 231, 590 N.W.2d 301, 302 (1998). "Once a duty is voluntarily assumed, it must be performed with some degree of skill

<div align="center">-16-</div>

and care." *Ibid.* The second amended complaint adequately alleges that, having voluntarily undertaken to act in issuing the recall, the defendant failed to do so with reasonable care, based on the knowledge of the danger of the Jeep's design that was within its purview at the time.

In *Comstock v. Gen. Motors Corp.*, 358 Mich. 163, 99 N.W.2d 627 (1959), the Michigan Supreme Court held that in certain circumstances a manufacturer could be liable for failing to warn of a "latent defect" discovered after manufacture and sale of a vehicle. The court explained:

> We think that the testimony pertaining to the brake failure and the defects in the 1953 Buick power brake cylinder was sufficient to allow the jury to infer negligence on the part of defendant General Motors Corporation in this case.

> There is, however, in this case other testimony from which the jury could conclude that the manufacturing and testing precautions taken by General Motors' Buick division were reasonable ones under all the circumstances; and that the failure of the 'O' ring sealers could not reasonably have been foreseen.

> Even if such a conclusion were reached on this record, however, we do not think the question of negligence ends there. Buick division subsequently learned in fact that they had built thousands of power brakes with a defective part. The facts pertaining to furnishing of replacement kits and assumption of costs allow no other inference than that defendant had ample warning of a serious problem concerning the 1953 Buick power brakes well before the brakes involved here failed.

> Defendant's Buick division warned its dealers. *It did not warn those into whose hands they had placed this dangerous instrument and whose lives (along with the lives of others) depended upon defective brakes which might fail without notice.*

> *In our view, the facts in this case imposed a duty on defendant to take all reasonable means to convey effective warning to those who had purchased '53 Buicks with power brakes when the latent defect was discovered.*

> The duty to warn of known danger inherent in a product, or in its contemplated use, has long been a part of the manufacturer's liability doctrine.

358 Mich. at 175-77, 99 N.W.2d at 633-34. In this case, the pleadings can be read sufficiently to allege both that the manufacturer knew of some risk of the design when the Jeep Liberty was designed and sold, and also that it subsequently learned of a more severe "latent" risk of the design,

aggravated by "high speed" rear-end collisions, about which it failed to give any effective warning, even when reports of fatal fires due to such collisions began to mount.

It is true that failure to warn of a known design defect at the point of sale, although sufficient to sustain a product liability claim, will not give rise under Michigan law to any congruent post-sale duty either to warn of or to repair the defect. As the Michigan Supreme Court explained in *Gregory v. Cincinnati Inc.*, 450 Mich. 1, 538 N.W.2d 325 (1995):

> In [*Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984)], we held that design defect cases require a risk-utility balancing test. With the focus on conduct rather than simply the product, proof of a defect by the risk-utility test resolves any issue of latency because the result of the test is a finding that the manufacturer either knew or should have known of the danger at the point of manufacture. Accordingly, *a design defect cannot, practically speaking, be deemed undiscoverable at the point of manufacture. In other words, constructive knowledge imputed to the manufacturer under the state of the art at the time of design renders the concept of latency at issue in* Comstock *moot in a design defect case.* There being no issue of latency, the question becomes whether any postmanufacture duty is imposed.
>
> Because a *prima facie* case is established once the risk-utility test is proven, we are persuaded that it is unnecessary and unwise to impose or introduce an additional duty to retrofit or recall a product. Focusing on postmanufacture conduct in a negligent design case improperly shifts the focus from point-of-manufacture conduct and considers postmanufacture conduct and technology that accordingly has the potential to taint a jury's verdict regarding a defect.

450 Mich. at 21-22, 538 N.W.2d at 333-34 (citations omitted). However, the answer to the question whether the defect in this case was entirely identified by the time of sale or partially "latent" will have to await the development of the record, which will determine whether the plaintiffs can proceed on either theory — or on both — at trial. *See Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 421 (D.N.J. 2016) ("At the pleading stage . . . where the distinction between a defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether

the complaint survives.  It is unclear what may have caused the alleged Surface Knob and Ignition System Defects; *a fortiori*, it is not clear whether (assuming they exist) they should be classified as design defects or defects in materials or workmanship. Such issues must await factual development.").

<p style="text-align:center">C.</p>

Finally, FCA contends that the amended complaint violates Federal Rule of Civil Procedure 8, which requires a complaint to consist of " a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  At 45 pages and 133 paragraphs, the amended complaint pushes the limits of the "short" requirement.  But the purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 555 U.S. at 555 (internal quotation marks and ellipses omitted).  The amended complaint satisfies that purpose.

FCA criticizes the pleading as containing too much extraneous detail.  It does appear that the plaintiffs chose to include a surfeit of background facts, which are not essential to their claims. Many of the allegations, however, are included to establish a right to economic damages in excess of the statutory damage cap.  "What constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 at 240–41 (3d ed. 2004).

It is true that a complaint that is verbose may be subject to dismissal for failure to comply with Rule 8. *Vicom v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (noting

that "[a] complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation"). But here, the complaint plausibly alleges sufficient specific facts to suggest that the defendant was aware of and failed to warn the plaintiffs' decedents about the dangerously defective design of the Jeep Liberty's fuel tank, which resulted in the escalation of a survivable rear-end collision into a gruesome spectacle where 23-year-old Kayla White and her unborn fetus were burned alive while struggling desperately to escape from the car. Those pleadings are sufficient plausibly to sustain claims that the defendant negligently designed the Jeep Liberty fuel system — in particular by employing a rear-mounted fuel tank configuration that had led to similar horrific fires following rear end collisions in cars designed by other manufacturers decades before 2003.

The pleadings also sufficiently suggest that FCA failed to warn the plaintiffs' decedents of the dangers of their design, and, even when it undertook to perform a voluntary recall, did so unreasonably carelessly by failing to communicate the severity of the fuel tank fire risk and failing to advise owners to stop driving their cars.

Moreover, the facts about White's employment and the circumstances of her home life to which the defendant objects are pertinent at least to establish the value of the happy future and prospective earnings that were cut short by her untimely death.

There is no basis to dismiss the amended complaint in this case under Rule 8.

IV.

The Court has subject matter jurisdiction over the case under 28 U.S.C. § 1334(b), and the case was removed properly. The amended complaint states valid claims, including claims that the

plaintiffs are entitled to noneconomic damages in excess of Michigan's damage caps in product liability cases, and is not otherwise subject to dismissal under Rules 12(b)96)( or 8(a).

Accordingly, the plaintiffs' motion to remand [dkt. #4] and defendant FCA's motion to dismiss [dkt. #7] are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  November 16, 2017

<div style="border:1px solid;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 16, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI

</div>