UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN WHITE, as Personal Representative
of the Estate of KAYLA WHITE, deceased,
and CODY CAMPBELL, as Personal
Representative of the Estate of BRAEDIN
CAMPBELL, deceased,

        Case Number 17-12320
        Honorable David M. Lawson

        Plaintiffs,
v.

FCA US, LLC and CLARENCE HEATH,

        Defendants.
_____/

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The question presented by the defendant's motion for partial summary judgment is whether the plaintiffs, as personal representatives of the estates of the deceaseds, may recover damages for lost wages and earning capacity of their decedents. The defendant contends that answer is "no," arguing that Michigan's Wrongful Death Act limits recovery solely to damages for "loss of support," upon proof that they had a reasonable expectation of receiving support from the deceased. Because current Michigan statutory and decisional law compels the opposite answer, the Court will deny the defendant's motion.

I.

The sad facts of the case were discussed at length in the Court's previous opinion and order denying the defendant's motion to dismiss. The case arises from a November 2014 automobile collision in which the plaintiffs' decedents Kayla White and her unborn child were burned to death inside White's 2003 Jeep Liberty, after the vehicle was struck from behind by another driver. The

amended complaint pleads claims against defendant FCA US, LLC for (1) product liability under Michigan Compiled Laws § 600.2947(3) (Count I); (2) defective design under Mich. Comp. Laws §§ 600.2946(2), 2946a(3), 2949a (Count II); (3) failure to warn under Mich. Comp. Laws § 600.2946(2) (Count III); (4) breach of the implied warranty of fitness for use (Count V), and (5) "negligent recall" (Count VI). It also includes a claim for ordinary negligence against Clarence Heath, who was the driver of the car that struck White's Jeep (Count VII). In each of those counts, the plaintiffs pray for damages that include "[l]ost wages, compensation, and earning capacity, past, present and future." Am. Compl. ¶¶ 104, 112, 117, 122.

Defendant FCA filed its motion for summary judgment, seeking a ruling on the one issue that most has vexed the parties during their settlement negotiations. Citing *Miller v. State Farm Mutual Automobile Insurance Co.* and other state and federal cases, FCA insists that recovery of the decedent's potential lost wages is not permitted in this case because Michigan's Wrongful Death Act limits the scope of economic damages to the "financial loss actually incurred by the survivors as a result of their decedent's death." 410 Mich. 538, 561, 302 N.W.2d 537 (1981). The defendant asserts that the plaintiffs have not even alleged loss of support in their complaint, and in any event they could not recover such damages because the individuals named as the representatives of the estates cannot show that they had any reasonable expectation of receiving support from the decedents.

The plaintiffs respond that Michigan's Product Liability Act explicitly allows the recovery of economic damages comprising "objectively verifiable pecuniary damages arising from . . . loss of wages, loss of future earnings, [and] loss of employment." Mich. Comp. Laws § 600.2945(c). They insist that "[i]ntervention of death neither limits nor precludes the type of damages that could have been recovered by the person had the person survived the injury." *Thorn v. Mercy Memorial*

*Hospital Corp.*, 281 Mich. App. 644, 660, 761 N.W.2d 414, 424 (2008); *accord Denney v. Kent County Road Commission*, 317 Mich. App. 727, 731, 896 N.W.2d 808, 812 (2016), *app. denied*, 500 Mich. 997, 894 N.W.2d 608 (2017) ("[T]he damages available under the wrongful-death statute, MCL 600.2922(6), include 'any type of damages, economic and noneconomic, deemed justified by the facts of the particular case,' [a]nd economic damages include 'damages incurred due to the loss of the ability to work and earn money.' Therefore, damages for lost earnings are allowed under the wrongful-death statute." (quoting *Thorn*; citations omitted)).

The motion presents a purely legal question for decision.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The parties have not seriously contested the basic facts of the case on the question of allowable damages. Where, as here, the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

Because this Court has jurisdiction over this lawsuit due to the diverse citizenship of the parties, Michigan substantive law as prescribed by the state legislature and the Michigan courts furnishes the rules for decision. *KVG Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 822 (6th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Therefore, this Court applies "the same law that [the] state courts would apply." *Auburn Sales, Inc. v. Cypros Trading &*

*Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (citing *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)). If the state's highest court has decided an issue, this Court is bound to apply the rule of that case. *Ibid.* When there is no clear guidance from the state's highest court, the federal court looks to all "other available data, such as Restatements, treatises, law reviews, jury instructions, and any majority rule among other states." *Ibid.* And although decisions by the state's intermediate appellate courts "are not a binding source of authority," *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 623 (E.D. Mich. 2001), they are "authoritative absent a strong showing that the [state's supreme court] would decide the issue differently." *Auburn Sales*, 898 F.3d at 715 (quotations omitted).

FCA's argument is premised on its reading of the language of Michigan's Wrongful Death Act. That statute states that when a tortfeasor causes the death of another, the tortfeasor "shall be liable to an action for damages" in the same manner as "if death had not ensued." Mich. Comp. Laws § 600.2922(1). The Act requires that the lawsuit must be brought by the personal representative of the decedent's estate, and it "provides the exclusive remedy under which a plaintiff may seek damages for a wrongfully caused death.'" *Denney*, 317 Mich. App. at 730, 896 N.W.2d at 811 (quoting *Jenkins v. Patel*, 471 Mich. 158, 164, 684 N.W.2d 346, 350 (2004)).

A successful plaintiff may recover "damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased." Mich. Comp. Laws § 600.2922(6). The Act limits those entitled to share in a damage award to certain individuals "who suffer damages and survive the deceased,"

who may include "[t]he deceased's spouse, children, descendants, parents, grandparents, brothers and sisters," among others. Mich. Comp. Laws § 600.2922(3).

Viewing this catalog of damage items as exclusive, FCA contends that because loss of wages or earning capacity is not mentioned, the plaintiffs cannot recover for the benefit of the decedents' estates any economic damages comprising the lost wages and earning capacity that were cut off by the untimely deaths of Kayla White and her unborn child. And reasoning that the list of those who may recover is qualified by the requirement that the individual must "suffer damages," FCA believes that the deceased's survivors may recover economic damages only if they prove a "loss of financial support."

The Michigan Supreme Court has not conclusively settled this issue. And FCA's reading of the Wrongful Death Act collides with decisions by the Michigan Court of Appeals. In *Thorn v. Mercy Memorial Hospital Corp.*, the court expressly rejected the idea advanced by the defendant here that the Wrongful Death Act's listing of damages excludes other kinds of damages traditionally allowed for tort victims. The court held that the term "including" in section 600.2922(6) that preceded the list of possible damages must "be construed as merely providing specific examples of the types of damages available, and not an exhaustive list." 281 Mich. App. at 651, 761 N.W.2d at 418. Accepting the defendants' argument, the court said, would cause "an internal contradiction" in the statutory language. *Ibid.* The court explained that under the defendants' interpretation, "the statutory language would mandate both the award of damages 'consider[ed] fair and equitable, under all the circumstances' while simultaneously limiting a plaintiff's recovery only to those items specified in the list following the term 'including.'" *Ibid.* The court found that "such an interpretation conflicts with [its] rules of statutory interpretation." *Ibid.*

The plaintiff in *Thorn* sought to recover damages for the loss of household services that would have been provided by the deceased wife and mother who lost her life, the plaintiff alleged, by the medical malpractice of the defendants. The trial court had disallowed those damages because they were not specifically mentioned in the Wrongful Death Act. In reversing, the Michigan Court of Appeals reasoned that because the Act did not create "an independent cause of action," the court must look to "the damages that are available in the underlying claim." *Id.* at 658, 659, 761 N.W.2d at 423 (citation omitted). "Consequently, the damages listed in [section] 600.2922(6) cannot be construed as exhaustive." *Ibid.*

The *Thorn* court acknowledged many of the federal cases FCA cites here, which suggested a narrow interpretation of section 600.2922(6). Those cases did not sway the court, which noted that it was "'not bound to follow a federal court's interpretation of state law.'" *Id.* at 652 n.2, 761 N.W.2d at 419 n.2 (quoting *Doe v. Young Marines of the Marine Corps League,* 277 Mich. App. 391, 399, 745 N.W.2d 168, 172 (2007)). Instead, the court observed that "our [Michigan] Supreme Court has issued numerous rulings expressing an expansive interpretation of the damages available under the WDA." *Id.* at 653, 761 N.W.2d at 420. The guiding principle is that "the intervention of death neither limits nor precludes the type of damages that could have been recovered by the person had the person survived the injury." *Id.* at 660, 761 N.W.2d at 424.

In this case, the plaintiffs' action is based on Michigan's products liability law. Under that legal theory, plaintiffs may recover "economic loss," which is defined to include "loss of wages, loss of future earnings, . . . loss of employment, [and] other objectively verifiable monetary losses." Mich. Comp. Laws § 600.2945(c). Because "the wrongful-death act is essentially a 'filter' through which the underlying claim may proceed," *Wesche v. Mecosta County Road Commission*, 480

Mich. 75, 88, 746 N.W.2d 847, 856 (2008), those elements of economic damages are recoverable here.

The state court of appeals took up the issue again in *Denney v. Kent County Road Commission*, where the plaintiff sued for the wrongful death of her decedent who was killed in a motorcycle accident allegedly caused by a defectively maintained highway. 317 Mich. App. at 729, 896 N.W.2d at 811. The defendant Road Commission argued that it was immune from the damage claim for the decedent's lost wages and loss of earning capacity, because its legal exposure was limited to damages for bodily injury. *Ibid.* Rejecting that argument, the court held that "the damages available under the wrongful-death statute . . . include 'any type of damages, economic and noneconomic, deemed justified by the facts of the particular case.'" *Id.* at 731-32, 896 N.W.2d at 812 (quoting *Thorn*, 281 Mich. App. at 651, 761 N.W.2d at 418). Those "economic damages include 'damages incurred due to the loss of the ability to work and earn money. . . .'" *Id.* at 732, 896 N.W.2d at 812 (quoting *Hannay v. Dep't of Transp.*, 497 Mich. 45, 67, 860 N.W.2d 67, 81 (2014)). The court noted that to maintain a wrongful death action under the statute, a plaintiff "must . . . show[] that the decedent, if death had not ensued, could have maintained an action and recovered damages for his injuries.'" *Id.* at 735, 896 N.W.2d at 814 (citation omitted). The court reasoned, therefore that "the cause of action of a proper plaintiff under the wrongful death act is a derivative one in that the personal representative of the deceased stands in his shoes and is required to show that the deceased could have maintained the action if death had not ensued. . . .'" *Ibid.* (citation omitted). "Therefore, damages for lost earnings are allowed under the wrongful-death statute." *Id.* at 731-32, 896 N.W.2d at 812.

The *Denney* court also addressed the alternate argument FCA makes here, namely that the Wrongful Death Act conditions a survivor's recovery for loss-of-support type damages upon proof

that the deceased in fact would have provided support to the survivor. The court drew a distinction between a claim for loss of support and a claim for the decedent's lost earnings:

> [A] claim for lost financial support under the wrongful-death statute is not the same as a claim for lost earnings. Specifically, lost earnings are damages that the decedent could have sought on his own behalf had he lived, whereas damages for lost financial support would be sought by one who depended on the decedent for financial support. Because the damages are distinct, the fact that the wrongful-death statute allows for recovery of lost financial support does not change the character of plaintiff's claim for damages for the decedent's lost earnings.

*Id.* at 736-37, 896 N.W.2d at 814-15 (citations omitted).

That distinction is based on the well-accepted proposition that Michigan's Wrongful Death Act is an "integrated" act that provides for a single cause of action embracing both "survival" and "wrongful death" claims. *See In re Estate of Chenault*, No. 288515, 2010 WL 3238916, at *6 (Mich. Ct. App. Aug. 17, 2010) ("Michigan's wrongful death act . . . combines survival and wrongful death actions.") (citing *In re Haque Estate*, 237 Mich. App. 295, 307 n.8, 602 N.W.2d 622, 628 n.8 (1999)). As the Michigan Court of Appeals explained,

> Confusion in the application of [the ancient survival and wrongful death] statutes was ended when the Legislature, by the enactment of a new wrongful death act, 1939 PA 297, combined the two acts, requiring that all actions for injuries resulting in death be brought thereunder. 1939 PA 297 actually took the form of an amendment to the existing wrongful death act and provided for the repeal of any inconsistent provisions of the "survival act." After some initial difficulty in construing this new statute, it was made unmistakably clear by this Court . . . that the survival act was not repealed but was incorporated into the new death act to form a single ground of recovery in cases where tortious conduct caused death."

*In re Haque Estate*, 237 Mich. App. at 307 n.8, 602 N.W.2d at 628 n.8 (quotation marks omitted).

It follows then that Wrongful Death Act claimants seeking damages for loss of support must prove their damages by offering some evidence of a "reasonable expectation of support" from the deceased. *Thompson v. Ogemaw Cty. Bd. of Rd. Comm'rs*, 357 Mich. 482, 489, 98 N.W.2d 620, 624 (1959). But that does not diminish the coordinate rule that the personal representative stands in the shoes of the decedent and may recover all the damages the deceased would have been

entitled to had she not died.  Interpreting the Wrongful Death Act in another context, the Michigan Supreme Court explained:

> [W]e believe that the text of the wrongful death act, MCL 600.2922(1), (2), and (6), provides additional support for our understanding of § 1483 . . . . [W]hile we agree with the Chief Justice that the Legislature is free to make "a policy decision that the survivors of dead medical malpractice victims are entitled to lesser damages than are living medical malpractice victims who are suffering from one of the three types of permanent conditions enumerated in [§ 1483]", we see no indication in the statute that the Legislature, in fact, made such a decision; rather, we believe that the Legislature made a quite contrary policy decision in § 2922(1), (2), and (6) by permitting a decedent's estate to recover everything that the decedent would have been able to recover had she lived.

*Shinholster v. Annapolis Hosp.,* 471 Mich. 540, 564, 685 N.W.2d 275, 287-88 (2004).

The defendant contends that *Thorn* and *Denney* are novelties that ought to be disregarded by this Court as poorly reasoned and in tension with earlier decisions of the state's appellate courts. The Court does not see it that way.  Those decisions have not been criticized by Michigan courts, and they are binding on Michigan's trial and intermediate appellate courts.  *See* Mich. Ct. R. 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").  Moreover, the older, conflicting intermediate appellate decisions relied upon by the defendant are not even regarded by Michigan's own courts as controlling law.  *See ibid.*  The panel in *Thorn* also considered and rejected the same position advanced by the defendant here, based on the same authorities on which it principally relies, finding that the restrictive language in those cases was mere *dicta* and contrary to the subsequent development of the law by the Michigan Supreme Court.  *Thorn*, 281 Mich. App. at 652-53, 761 N.W.2d at 419-20 ("In contrast to the caselaw relied on by defendants, we note that our Supreme Court has issued

numerous rulings expressing an expansive interpretation of the damages available under the WDA." (collecting cases)).

Finally, FCA has argued at some length that "pecuniary loss" must be shown in order to recover in a wrongful death action, relying heavily on *Baker v. Slack*, a case that was cited in its reply brief, for that point of law. But the holding of that case was premised on language that later was amended out of the statute. *Brown v. Department of State Highways*, 126 Mich. App. 392, 394, 337 N.W.2d 76, 77 (1983) ("In *Baker v. Slack*, 319 Mich. 703, 30 N.W.2d 403 (1948), the Court held that damages for loss of a potential inheritance were not recoverable in an action for wrongful death, but the Court's holding was based on the requirement of 'pecuniary injury' which was later removed from the statute by 1971 P.A. 65.").

FCA contends that it should be granted partial summary judgment because the plaintiffs have not offered any evidence of pecuniary loss and have not even claimed loss-of-support damages in their amended complaint. It may be true that the plaintiffs have chosen not to pursue that species of damages. But that does not prohibit them from seeking damages for the decedents' lost wages and earning capacity. As the *Thorn* court observed, the defendant's reading of the Wrongful Death Act would lead to the absurd result that a tortfeasor whose negligence merely gravely injures a plaintiff would be held liable for far *more* in damages than one that succeeded in killing her, even though the injury resulted from precisely the same wrongful behavior. *See Thorn*, 281 Mich. App. at 660, 761 N.W.2d at 423-24 (noting that "the intervention of death neither limits nor precludes the type of damages that could have been recovered by the person had the person survived the injury").

It is undisputed that lost wages and earning capacity would have been recoverable by White and her unborn child had they survived the fatal collision. And as to the unborn child, for whom

estimation of a reasonable recovery may appear problematic, the product liability law explicitly provides a ready benchmark for assigning the measure of damages: "If damages for economic loss cannot readily be ascertained by the trier of fact, then the trier of fact shall calculate damages for economic loss based on an amount that is equal to the state average median family income as reported in the immediately preceding federal decennial census and adjusted by the state treasurer in the same manner as provided in subsection (1)." Mich. Comp. Laws § 600.2946a(4).

The plaintiffs may seek damages for lost wages and lost earning capacity of their decedents.

III.

The defendant has not shown that it is entitled as a matter of law to an order prohibiting the plaintiffs, as personal representatives of the estates of the deceased, from recovering damages for lost wages and earning capacity of their decedents.

Accordingly, it is **ORDERED** that the defendant's motion for partial summary judgment (ECF No. 46) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date:   November 19, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on November 19, 2018.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---